## Commonwealth v. Mitchell

C.P. of Montgomery County, no. 2687-06.

*Mary M. Killinger,* for Commonwealth.
*Robert C. Keller,* for appellant.

HODGSON, *P.J.,* January 18, 2007—Appellant, Dwayne Mitchell, appeals to the Superior Court from the judgment of sentence imposed upon him by this court on November 8, 2006.

## FACTS AND PROCEDURAL HISTORY

While working in his capacity as a patrol officer at approximately 5:30 p.m. on October 29, 2005, Officer Andrew Benner of the Montgomery Township Police Department effected a traffic stop of Appellant, Dwayne Mitchell, in Montgomery Township, Montgomery County, Pennsylvania for having invalid inspection stickers on his vehicle. (N.T., Wednesday, October 18, 2006, at pp. 15-17.) At the time of the traffic stop, appellant was operating the vehicle in question. (N.T., Wednesday, October 18, 2006 at p. 17.) During Officer Benner's conversation with appellant, appellant indicated that he worked in law enforcement and showed the officer a badge, a current Pennsylvania Certified Patrolman's Association card, and a Lethal Weapons Training Act Certification, or "Act 235" card. The back of the Act 235 card indicates that the card is not a license to carry a lethal weapon, but the card needs to be carried by an individual to whom it is issued while armed with a lethal weapon and while on duty or going to and from duty. (N.T., Wednesday, October 18, 2006, at p. 21.) In further conversation, appellant informed Officer Benner that he was in possession of a weapon. Appellant advised Officer Benner that he did not need a permit to carry the weapon because he was exempt from that requirement due to his employment status. (N.T., Wednesday, October 18, 2006, at pp. 28-29.) As of October 2005, appel-

lant did not have a valid license to carry a concealed firearm issued by the Pennsylvania State Police. (N.T. Wednesday, October 18, 2006, at p. 24.) His Act 235 card, however, was valid at the time of the traffic stop and was set to expire on December 1, 2005.

At the time of the stop, appellant was wearing civilian clothes and traveling to dinner at Red Lobster, Montgomeryville, Montgomery County, Pennsylvania. He was traveling with a woman and two children whom Officer Benner presumed were his wife and children. (N.T., Wednesday, October 18, 2006, at p. 20.) In addition to Officer Benner, Patrol Officer Gerald Dougherty of the Montgomery Township Police Department arrived to assist Officer Benner at the scene. (N.T., Wednesday, October 18, 2006, at pp. 31-32.) Upon arriving at the scene, Officer Dougherty spoke with Officer Benner regarding appellant's identification cards. Thereafter, Officer Dougherty approached appellant and asked him if he had a weapon to which appellant responded that he did. Appellant was then directed to exit the vehicle so that Officer Dougherty could secure the weapon. Appellant then produced for Officer Dougherty a Smith and Wesson 9mm, which appellant was carrying on his hip. (N.T., Wednesday, October 18, 2006, at p. 33.) As a result of the stop, appellant was subsequently charged with possession of a firearm not to be carried without a license under section 6106(a) of the Crimes Code.

Appellant's bench trial took place on October 18, 2006. At trial, Officer Benner and Officer Dougherty testified to the above events. In addition, Officer Dougherty testified to the relevant differences between Act 235 and

Act 120, the act under which police officers are certified to carry lethal weapons and trained in the use of such weapons by the Pennsylvania State Police. He testified that unlike individuals certified under Act 235, officers who are certified under Act 120 may carry a lethal weapon on or off duty without a license. Conversely, Officer Dougherty testified that Act 235 is geared towards private security employment and as such, a person certified under Act 235 is permitted to carry a lethal weapon without a license only while on duty or going to and from duty. (N.T., Wednesday, October 18, 2006, at pp. 35-39.)

In support of appellant, Archie Watkins, appellant's commanding officer, testified to the nature of appellant's work with the Pennsylvania Certified Patrolman's Association. According to Mr. Watkins, the association has been in existence for 13 years and provides security work for churches, banks, private individuals, and the like. (N.T.. Wednesday, October 18, 2006, at pp. 45-52.) He admitted, however, that at the time of appellant's traffic stop, the association did not have any security contracts in Montgomery Township. With regard to the appellant, Mr. Watkins testified that due to the nature of appellant's employment, appellant is on duty 24 hours a day, seven days a week. (NT., Wednesday, October 18, 2006, at p. 55.) Nevertheless, Mr. Watkins admitted that appellant is only compensated when he is actually dispatched. (N.T., Wednesday, October 18, 2006, at p. 55.) Additionally, Mr. Watkins testified that employees of the association wear full uniforms including badges, handcuffs, radios, hats, and name tags. (N.T., Wednesday, October 18, 2006, at pp. 71-72.)

Thereafter, on October 23, 2006, the undersigned found appellant guilty of unlawfully carrying in a vehicle a certain firearm without having a valid and lawfully issued license therefor under section 6106(a) of the Crimes Code. On November 8, 2006, appellant was sentenced to one-year probation for his conviction. Appellant subsequently appealed his judgment of sentence on December 7, 2006. In accordance with section 1925(b) of the Pennsylvania Rules of Appellate Procedure, we directed appellant to file a concise statement of matters complained of on appeal no later than December 26, 2006. Appellant filed such statement on December 26, 2006.

## LEGAL DISCUSSION

On appeal, appellant raises the following issues:

• The trial court erred by finding Dwayne Mitchell guilty of violating 18 Pa.C.S. §6106(a) because he was on duty at the time of his stop and therefore exempt from the licensing requirement of 18 Pa.C.S. §6106(a) based on the Lethal Weapons Training Act.

• The trial court erred by finding that Dwayne Mitchell was not exempt from the permit requirement of 18 Pa.C.S. §6106(a) pursuant to 18 Pa.C.S. §6106(b).

• The trial court erred by finding that Dwayne Mitchell was not exempt from the permit requirement of 18 Pa.C.S. §6106(a) pursuant to 18 Pa.C.S. §6106(b)(1).

• The trial court erred by finding that Dwayne Mitchell was not exempt from the permit requirement of 18 Pa.C.S. §6106(a) pursuant to 18 Pa.C.S. §6106(b)(6).

## I. *Was Appellant On Duty at the Time of the Traffic Stop and Therefore Exempt From the Licensing Requirement of Section 6106(a)?*

Section 6106(a) of the Crimes Code provides:

"(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

"(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree." 18 Pa.C.S. §6106(a).

It is undisputed that at the time of the traffic stop, appellant was carrying a firearm in his vehicle and did not have a valid license to carry that firearm. The relevant inquiry, therefore, is whether appellant's certification under Act 235 dispensed with the need for appellant to have a license to carry the firearm in accordance with section 6106(a) at the time of the traffic stop. The Lethal Weapons Training Act, 22 Pa.C.S. §41, et seq. (Act 235), was enacted to provide training in lethal weapons to private security enforcement personnel. Upon satisfactory completion of a program developed under Act 235, an individual is issued a certificate, which such person is required to possess whenever on duty or going to and

from duty and carrying a lethal weapon. 22 Pa.C.S. §§47, 48(a). This certificate essentially eliminates the need for privately employed security personnel, like appellant, to maintain a license to carry a firearm while that person is on duty or is going to and from duty.

Appellant argues that he is on duty 24 hours a day, seven days a week and, therefore, his certification under Act 235 permits him to carry a firearm at all times. We disagree with this proposition. Such a finding by this court would blur the distinction between Act 120 and Act 235 by allowing private security individuals, who are not subject to intensive police training, to have the same authority to carry a lethal weapon as police officers. Further, our conclusion that appellant is not always on duty is supported by the fact that he is only compensated when he is actually dispatched.

Additionally, the testimony presented at trial does not support the conclusion that appellant was on duty at the time of the traffic stop. The record reveals that at the time of the traffic stop, he was traveling with a woman and children to Red Lobster in Montgomery Township and not to a job site. Further, Mr. Watkins testified that the association did not have contracts within Montgomery Township on the date of the traffic stop, thereby precluding the possibility that appellant was traveling to a job site. During his testimony, Mr. Watkins indicated that employees wear full uniforms. At the time of the traffic stop, appellant was in civilian clothes. Based on these facts, we find that at the time of the incident, appellant was not on duty or going to or from duty at the time of the traffic stop. Accordingly, appellant's certification under Act 235 is inapposite to the present fact situation

and, therefore, we find that appellant was required to possess a license for the firearm at the time of the traffic stop.

## II. *Is Appellant Exempt From the License Requirement of Section 6106(a) of the Crimes Code?*

That being said, appellant will be in violation of section 6106(a) of the Crimes Code unless an exception provided for in section 6106(b) is applicable. Appellant argues that both section 6106(b)(1) and section 6106(b)(6) apply.

Section 6106(b)(1) provides an exception for "constables, sheriff's prison or jail wardens, or their deputies, policemen of this Commonwealth or its political subdivisions, or other law enforcement officers." Section 6102 of the Crimes Code specifically defines a "law enforcement officer" as "any person employed by any police department or organization of the Commonwealth or political subdivision thereof who is empowered to effect any arrest with or without warrant and who is authorized to carry a firearm in the performance of that person's duties." We decline to accept appellant's argument that because the legislature used "other law enforcement" it meant something different than "law enforcement." We find such an argument contrary to the legislative intent of the statute. The legislature provided for a specific definition of law enforcement in the Crimes Code and as such, a common sense approach to interpreting the statute requires us to employ the legislature's definition. See *Commonwealth v. Pozza,* 750 A.2d 889 (Pa. Super. 2000) (employing commonsense approach to interpreting statutes).

Applying this definition, we find that appellant's occupation in private security does not meet this definition of law enforcement officer. First, the definition specifically contemplates that the person be employed by a police department or organization of the Commonwealth. Appellant is not employed by any such entity but rather, is employed by a private security association. Second, appellant does not have arrest powers. As such, appellant fails to meet the definition of law enforcement officer and, therefore, the exception enumerated in section 6106(b)(1) is inapplicable.

Contrary to appellant's contentions, section 6106(b)(6) is also inapplicable. Section 6106(b)(6) provides an exception for "[a]gents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties." While appellant does provide security for banks and the like in the course of his employment, at the time of the traffic stop, appellant was not "in the discharge of such duties." Rather, he was traveling to dinner. Accordingly, this exception is also inapposite.

We also refuse to accept appellant's argument that Act 235 and section 6106 of the Crimes Code are inconsistent. Act 235 was enacted in order to provide education, training, and certification of privately employed agents who use lethal weapons including firearms as an incidence of their employment. 22 Pa.C.S. §§42, 48. Conversely, section 6106 is a penal statute designed to set out the offense of firearms not to be carried without a license. Both of these acts were separately created and

for different purposes and, therefore, we find no conflict between them.

## CONCLUSION

Based on the foregoing, the undersigned respectfully requests that appellant's judgment of sentence be affirmed.